STEPHEN LEACH, Respondent, *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant.

*Breach of contract — amount of recovery where the damages are uncertain — how determined — evidence.*

When it is uncertain whether damages have been sustained by the violation of a contract none can be recovered, but when it appears that damages have been caused by the breach of a contract, the amount of which, however, is uncertain and incapable of ascertainment by computation or by direct evidence, the injured party is entitled to recover such damages as he can show to be the direct results of the breach of the contract.

Where the damages can be ascertained by computation, or are in their nature capable of being definitely fixed, the parties are confined to direct evidence, and are not permitted to prove collateral facts from which inferences as to the amount of the damages sustained may be drawn.

Where the damages cannot be fixed by computation or by direct evidence, the kind and character of evidence admissible for the purpose of proving the damages depends upon the circumstances of each case.

Evidence which would be competent in one case would be utterly incompetent in another, and the inquiry always is whether, under the circumstances of the case in hand, evidence has been given which would authorize a jury to award more damages than are shown to flow directly from the breach of the contract.

APPEAL by the defendant, The New York, New Haven and Hartford Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 15th day of February, 1895, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 20th day of February, 1895, denying the defendant's motion for a new trial made upon the minutes.

*Henry W. Taft*, for the appellant.

*Ira B. Wheeler*, for the respondent.

FOLLETT, J.:

This action was begun March 29, 1893, to recover damages for an alleged breach of a contract to carry the equipment of a theatrical company. The plaintiff was the owner of a theatrical troupe called "Dark Secret Company," and was engaged in performing a play called "The Dark Secret" in various cities in the New England States and in this State. On Saturday evening, December 31, 1892, the plaintiff gave a performance at Norwich, Conn., and after its conclusion loaded his scenery and properties forming the stage outfit on one of defendant's cars to be forwarded to the city of New York. Had the car been sent forward in due course it would have reached the city of New York not later than half-past six o'clock on the morning of Monday, January 2, 1893. The plaintiff had advertised to exhibit his play at Yonkers, N. Y., in the afternoon and in the evening of Monday, January 2, 1893, and sold tickets for both exhibitions. The defendant did not deliver the car at the Grand Central Depot in the city of New York until thirty-two minutes past seven o'clock in the evening of Monday, January second, so that the plaintiff was unable to give either exhibition advertised at Yonkers, and was compelled to refund the money received for tickets sold. The plaintiff alleges that the defendant contracted to deliver the car at the Grand Central Depot by half-past six in the morning of January 2, 1893. The defendant admitted that it received the plaintiff's goods on board its car at Norwich, Conn., before midnight of December 31, 1892, but denied that it agreed to deliver the car at New York by six-thirty A. M. January 2, 1893, and set up that the reason of its failure to move the car from New London, where it arrived Sunday evening at seven-thirty-five, was because the plaintiff had failed to prepay the charges for the use of the car. On the trial the defendant urged that the contract to transport the car was a mere incident to a contract to carry the persons composing the troupe from New London to New York, and, in violation of an implied agreement that the troupe should go by the defendant's road, they went by boat from New London to New York. This defense was not set up in the answer. There was a

sharp conflict in the testimony over the terms of the contract. The witnesses sworn in behalf of the defendant testified that the agreement was that the charges for the car should be prepaid before it should leave Norwich, Conn. The witnesses sworn in behalf of the plaintiff testified that there was no such agreement. The witnesses agree that the car left Norwich, Conn., at seven o'clock P. M., Sunday, January 1, 1893, and arrived at New London thirty-five minutes later. The witnesses also agree that in the forenoon of January second, the plaintiff called at the Grand Central Station at the city of New York to inquire after his car, and, finding it had not arrived, called on one of defendant's officers, who inquired by telegraph or telephone of the defendant's agents at New Haven, and learned that the car was held for the prepayment of forty-seven dollars and fifty cents charges. The plaintiff thereupon paid the charges to the defendant. There was a sharp controversy as to the time when the charges were paid, the plaintiff testifying that they were paid at about twelve-fifteen P. M., and the witnesses for the defendant testifying that they were paid at about two-thirty P. M. It is conceded that if the charges were paid at twelve-fifteen P. M. the defendant might have, with due diligence, delivered the car at New York at half-past four in the afternoon of the same day, but if they were paid at half-past two the car could not have been delivered at New York before seven-thirty-two in the evening, at which time it did arrive. These questions of fact were sharply contested on the trial, but were found for the plaintiff, and a verdict for $630 damages rendered, which cannot, under the well-settled rules, be set aside as contrary to the weight of evidence. The evidence being sufficient to require the submission of the case to the jury, it was not error for the court to refuse to nonsuit the plaintiff.

The exceptions taken by the defendant to the admission and exclusion of evidence relate (1) to evidence bearing upon the plaintiff's right to recover; (2) to the amount of damages recoverable in case he established a cause of action. The exceptions of the first sort do not require much consideration. The defendant, by a series of questions to its general passenger agent, sought to show that it was customary for the members of theatrical troupes to travel on the line which transported the scenery and paraphernalia of the proprietor of the exhibition. This evidence was offered for the purpose of

raising the issue that the plaintiff violated an implied condition of the contract by having the members of his troupe carried from New London to New York by boat instead of by the defendant's railroad. No such defense was set up in the answer. Besides, the contract, as testified to by the witnesses on both sides, does not refer to the carriage of persons or of personal baggage such as travelers are entitled to have carried in consideration of their payment of fare. The contract was to furnish a car at Norwich, Conn., for the purpose of transporting the plaintiff's property to New York. After the car was loaded the plaintiff was given the keys, and there is no evidence in the case, and none was offered, from which it could have been inferred that the contract was for the carriage of the personal baggage of the members of the troupe, for which an extra charge was made by reason of its amount. The articles in the car were not checked, neither were they carried as an incident of the carriage of the passengers, but they were transported under a special contract for which a fixed compensation was charged. No error was committed in not permitting the defendant to prove the custom of its road, or of other transportation companies, nor was it competent for the defendant to prove that it would not have made the contract had it known that the members of the troupe were to go from New London to New York by boat.

The refusal to permit Southard to answer the question, " whether Mr. Mackenzie immediately repeated to you what the person at the other end of the telephone stated to him?" was not error. He had testified that he overheard the telephonic communication between the plaintiff and Mackenzie (the superintendent of the New London and Northern railroad), and testified to what he heard. Mackenzie testified to what was said between himself and the plaintiff, and that Southard overheard the conversation and commented on it at the time of its occurrence.

When it is uncertain whether damages have been caused by the violation of a contract, none can be recovered, a jury not being permitted to speculate whether damages may not have been occasioned; but when it appears that damages have been caused by the breach of a contract, the amount of which is uncertain and incapable of ascertainment by computation or by direct evidence, the injured party is entitled to recover such as he can show to be the direct

results of the breach of the contract. In many cases the damages can be ascertained by computation, or are in their nature capable of being definitely fixed, and in such cases the parties are confined to direct evidence and are not permitted to prove collateral facts from which inferences as to the amount of damages sustained may be drawn. In cases where the damages cannot be fixed by computation or by direct evidence, the kind and character of evidence admissible for the purpose of proving the damages depend upon the circumstances of each case. Evidence which would be quite competent in one case would be utterly incompetent in another, and the inquiry always is whether, under the circumstances of the case in hand, evidence has been given which would authorize a jury to award more damages than are shown to flow directly from the breach of the contract. In this case the amount of the plaintiff's damages was incapable of being accurately fixed, but that was no reason why he should be deprived of all damages. It was shown that before it was known that the car would not arrive he sold tickets for the performances advertised for the afternoon and evening of January second. This money (between $350 and $400) the plaintiff was compelled to refund. It is well known that only a portion of tickets for entertainments are purchased long in advance of exhibitions, and we do not think it was error to permit the plaintiff to prove, by a person who had for several years been engaged in the sale of tickets for this particular place of amusement at Yonkers, and who sold these tickets, to testify that about one-fourth of the whole amount of tickets sold were usually sold in advance of entertainments. The damages awarded in this case were not large, and, under the evidence, probably not more than the plaintiff would have received for either entertainment.

The fact that the plaintiff was permitted to testify that the property contained in the car was worth about $8,000 was not error. It was stated that it was offered for the purpose of showing that the defendant had ample security for carrying the goods, and that there was no reason for stopping them in transit to secure a prepayment of charges.

The judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.